## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHIRLEY TRUSCOTT, STEVEN UTSCHIG, ROBERT WILHIDE, HAROLD W. WILKINSON, PATRICIA WISEMAN, GORDON WRIGHT, THOMAS YOUNG, ELIZABETH ZEI, and PATRICK ZOLLER,<br><br>Plaintiffs,<br><br>v.<br><br>MERCK & CO., INC.,<br>One Merck Drive<br>Whitehouse Station, NJ 08889<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ Case No. _____<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant Merck & Co., Inc. ("Merck") hereby petitions

this Court for removal of the above-captioned action from the Superior Court of the District of

Columbia to the United States District Court for the District of Columbia, pursuant to 28 U.S.C.

§§ 1441 *et seq.*, on the basis of the following facts, which demonstrate the existence of subject

matter jurisdiction in this Court:

1.      This is one of numerous personal injury cases that have been filed in both federal

and state courts around the country concerning the pharmaceutical Vioxx® ("Vioxx"). On

February 16, 2005, the Judicial Panel on Multidistrict Litigation (the "Panel") issued a transfer

order, establishing MDL Proceeding No. 1657, *In re VIOXX Products Liability Litigation.* The

Transfer Order directed that 148 cases subject to original motions be transferred and coordinated

for pretrial proceedings in the United States District Court for the Eastern District of Louisiana,

before the Honorable Eldon E. Fallon. The 148 cases subject to the Transfer Order, while

involving different and distinct facts, raise certain overlapping factual issues and allege similar

legal theories. On March 4, 2005, the Panel issued Conditional Transfer Order No. 1 transferring additional federal district court cases to the United States District Court for the Eastern District of Louisiana, pending opposition from any party. Merck intends to provide notice to the Panel, pursuant to J.P.M.L. Rule 7.5, of the pendency of this "tag-along" action.

2.      On or about September 28, 2007, Plaintiffs commenced this civil action, which was assigned Civil Action No. 07-ca-6598 the Superior Court of the District of Columbia, by filing a Complaint. On or about November 27, 2007, Plaintiffs filed a First Amended Complaint for Damages ("First Amended Complaint") in the Superior Court of the District of Columbia. Merck now timely removes this action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

3.      For the reasons described below, removal of this action is proper because (1) Merck has satisfied the procedural requirements for removal and (2) this Court has jurisdiction over the action pursuant to 28 U.S.C. § 1332.

## I.      MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

4.      On November 27, 2007, Merck was served by electronic service with a Summons and the First Amended Complaint, the initial pleading setting forth the purported claims for relief. Thus, this Notice of Removal is timely since it is being filed within thirty days after receipt of the First Amended Complaint. 28 U.S.C. § 1446(b).

5.      The United States District Court for the District of Columbia embraces the county in which the state court action is now pending. Therefore, removal to this Court is proper pursuant to 28 U.S.C. §§ 88 & 1441(a).

6.      No previous application has been made for the relief requested herein.

7.    A written Notice of Filing of Notice of Removal, together with a copy of this Notice of Removal, will be f led with the Clerk of Court for the Superior Court of the District of Columbia and will be served upon Plaintiffs, as required by 28 U.S.C. § 1446(d).  True and correct copies of all process, pleadings, and orders served upon Merck to date in the Superior Court of the District of Columbia are attached hereto collectively as Exhibit 1, pursuant to 28 U.S.C. § 1446(a).

## II.    REMOVAL IS PROPER IN THIS CASE BASED ON DIVERSITY JURISDICTION.

8.    As more fully described below, this Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because it is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interests, and it is between citizens of different States.

### A.    The Amount in Controversy Exceeds $75,000.

9.    Plaintiffs allege that the amount in controversy in this personal injury action exceeds $75,000 exclusive of interest and costs.  First Am. Compl. ¶ 6.  Plaintiffs also claim that they are entitled to punitive damages from Merck.  *Id.* ¶ 86.

10.    In addition, federal courts around the country have ruled that federal diversity jurisdiction exists in similar actions alleging personal injuries caused by Vioxx.  *See, e.g.*, *Stubblefield v. Merck & Co., Inc.*, Civ. No. H-02-3139 (S.D. Tex. Oct. 8, 2002); *Zeedyk v. Merck & Co., Inc.*, No. 02-C-4203 (N.D. Ill. Aug. 30, 2002); *Abrusley v. Merck & Co., Inc.*, No. 02-0196 (W.D. La. June 18, 2002); *Jones v. Merck & Co., Inc.*, Civ. No. 02-00186 (D. Haw. June 5, 2002).  These courts all were presented with complaints seeking actual and punitive damages for injuries caused by Vioxx, and all found that the requirements for federal diversity jurisdiction,

including the amount in controversy, were satisfied. These decisions, combined with the foregoing evidence, make it clear that Merck has proven "by a preponderance of the evidence" and to "a legal certainty" that the amount in controversy satisfies the requirements for federal jurisdiction.

**B.      There Is Complete Diversity Between Plaintiffs and Merck.**

11.      Paragraph 2 of the First Amended Complaint alleges that Plaintiffs are citizens and residents of states other than New Jersey.

12.      Merck is, and was at the time of the filing of this lawsuit, a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey. Accordingly, Merck is a citizen of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1). Accordingly, there is complete diversity between Plaintiffs and Merck.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _Katherine Leong_____
Douglas R. Marvin
(D.C. Bar No. 933671)
Paul K. Dueffert
(D.C. Bar No. 435452)
Katherine Leong
(D.C. Bar No. 492457)

725 12th Street, N.W.
Washington, D.C.  20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Attorneys for Defendant Merck & Co., Inc.*

Dated:  December 18, 2007

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 18th day of December, 2007, a true copy of the foregoing Notice of Removal was served via U.S. first-class mail, postage prepaid to the following:

Turner W. Branch, Esq.
1424 K Street, NW
6th Floor
Washington, DC  20005

*Katherine Leong*
Katherine Leong

**Exhibit 1**

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Shirley Truscott
3608 Parkway Dr.
Royal Oak, MI 48073

and

Steven Utschig
3111 E. Greenleaf Drive
Appelton, WI 54913

and

Robert Wilhide
7128 Blue Mountain Rd.
Thurmont, MD 21788

and

Harold W. Wilkinson
1470 Lake Harney Road
Geneva, FL 32732

and

Patricia Wiseman
980 Century Avenue SE
Palm Bay, FL 32909

and

Gordon Wright
2820 NE 97th St. Rd.
Anthony, FL 32617-0000

and

Thomas Young
P.O. 1171
Purvis, MS 39475

and

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**Civil Action No:___07-ca-6598___**

**JURY TRIAL DEMANDED**

WCS&R

NOV 2 8 2007

RECEIVED

1

M00E518664

Elizabeth Zei                          §
676 East Jackson Street                §
Ripon, WI 54971                        §
                                       §
    and                                §
                                       §
Patrick Zoller                         §
723 Tulip Circle West                  §
Auburndale, FL 33823,                  §
                                       §
        Plaintiffs,                    §
                                       §
    v.                                 §
                                       §
MERCK & CO., INC.,                     §
One Merck Drive                        §
Whitehouse Station, NJ 08889           §
    w/s/o CT CORPORATION               §
    1015 15th Street, N.E. Ste 1000    §
    Washington, DC 20005               §
                                       §
        Defendants.                    §

### FIRST AMENDED COMPLAINT FOR DAMAGES: STATUTE OF LIMITATIONS TOLLED AS RESULT OF MERCK'S FRAUDULENT CONCEALMENT; STRICT LIABILITY PURSUANT TO 402(a) OF THE RESTATEMENT (SECOND) OF TORTS; NEGLIGENCE; GROSS NEGLIGENCE; NEGLIGENT MISREPRESENTATION; DECEPTIVE TRADE PRACTICES; BREACH OF EXPRESS WARRANTY; BREACH OF IMPLIED WARRANTY;; LOSS OF CONSORTIUM; DISTRICT OF COLUMBIA'S CONSUMER PROTECTION ACT; SURVIVAL ACTTIONS; AND JURY TRIAL DEMAND

1. Jurisdiction is appropriate under the Superior Court of the District of Columbia under § 11-501 et seq.

2. Plaintiffs are citizens and residents of states other than New Jersey.

3. Defendant Merck & Co. ("Merck"), and/or its wholly-owned subsidiaries, is engaged, or has been engaged, in the manufacturing, marketing, sale, promotion, and distribution of

M00E516665

pharmaceuticals throughout the United States, the United Kingdom, the Netherlands and is doing business in the District of Columbia.

4. Defendant is the manufacturer of Vioxx ("VIOXX") who sold and promoted the drug to Plaintiffs, either directly, and/or through its wholly-owned subsidiaries, between May 1999, when VIOXX was approved by the FDA, and September 2004, when it was voluntarily withdrawn from the market.

5. VIOXX is a non-steroidal anti-inflammatory medication known as Rofecoxib, which was manufactured, promoted, and distributed by Defendant Merck, and/or its wholly-owned subsidiaries, as a safe and harmless pain medication in the District of Columbia, across America, as well as world wide. Merck Sharpe & Dohme BV (The Netherlands) and Merck Sharpe & Dohme Limited (United Kingdom) are wholly-owned subsidiaries of Merck. At all times relevant hereto, all the marketing, distributing, labeling, and warning for VIOXX were provided to these subsidiaries by their parent corporation Merck.

6. The amount in controversy exceeds $75,000 exclusive of interest and costs.

7. Between May 1999 and September 30, 2004, Plaintiff Shirley Truscott made several purchases of VIOXX for prescribed treatment of pain by her physician in the state of Michigan. She took Vioxx until she suffered a heart attack in December 1999 and in December 2004 as a proximate result of his ingestion of VIOXX.

8. Between May 1999 and September 30, 2004, Plaintiff Steven Utschig made several purchases of VIOXX for prescribed treatment of pain by his physician in the state of Wisconsin. He took Vioxx until he suffered a heart attack in June 2000 and in January 2003 as a proximate result of his ingestion of VIOXX.

M00E516G66

9.  Between May 1999 and September 30, 2004, Plaintiff Robert Wilhide made several purchases of VIOXX for prescribed treatment of pain by his physician in the state of Maryland. He took Vioxx until he suffered a heart attack in May 2003 as a proximate result of his ingestion of VIOXX.

10.  Between May 1999 and September 30, 2004, Plaintiff Harold W. Wilkinson made several purchases of VIOXX for prescribed treatment of pain by his physician in the state of Maryland. He took Vioxx until he suffered a heart attack in late 2000/early 2001 as a proximate result of his ingestion of VIOXX.

11.  Between May 1999 and September 30, 2004, Plaintiff Patricia Wiseman made several purchases of VIOXX for prescribed treatment of pain by her physician in the state of Florida. She took Vioxx until she suffered a heart attack in May 2003 as a proximate result of his ingestion of VIOXX.

12.  Between May 1999 and September 30, 2004, Plaintiff Gordon Wright made several purchases of VIOXX for prescribed treatment of pain by his physician in the state of Florida. He took Vioxx until he suffered a heart attack on or about June 19, 2000 as a proximate result of his ingestion of VIOXX.

13.  Between May 1999 and September 30, 2004, Plaintiff Thomas Young made several purchases of VIOXX for prescribed treatment of pain by her physician in the state of Mississippi. He took Vioxx until he suffered a heart attack on or about August 19, 2000 and a stroke as a proximate result of her ingestion of VIOXX.

14.  Between May 1999 and September 30, 2004, Plaintiff Elizabeth Zei made several purchases of VIOXX for prescribed treatment of pain by her physician in the state of Wisconsin.

4

M00E516667

She took Vioxx until she suffered a heart attack in September 2002 as a proximate result of his ingestion of VIOXX.

15.    Between May 1999 and September 30, 2004, Plaintiff Patrick Zoller made several purchases of VIOXX for prescribed treatment of pain by his physician in the state of Florida. He took Vioxx until he suffered a heart attack on or about July 4, 2004 as a proximate result of his ingestion of VIOXX.

16. The Plaintiffs above were not in any manner informed or advised that VIOXX was an unreasonably dangerous drug, nor of the Defendant and/or Defendant's wholly-owned subsidiaries' wrongful conduct in promoting VIOXX prior to year 2004.

## FACTUAL ALLEGATIONS

17.    In 1992, **MERCK** or its predecessor began researching a "blockbuster drug" in other words, a drug with tremendous profit potential, which scientists quoted as being a "super aspirin." This "super aspirin" was a class of drug known as a Cox-II selective inhibitor.

18.    In that same year, however, other U.S. pharmaceutical companies also had versions of "Cox-II selective inhibitors" in development and therefore, in order to avoid potential threat to the tremendous profit potential that **MERCK** saw from this "super aspirin," **MERCK** stepped up its efforts to develop, patent and markets its version of the selective inhibitor of Cox-II.

19.    In order to be the first to market this drug, **MERCK** took certain critical shortcuts in its clinical trial tests, including but not limited to, removing patients who suffered side effects from its study in order to keep an expressed pattern from developing in its clinical trials of its version of the selective inhibitor of Cox-II.

5

M00E516668

21. . **MERCK**'s Cox-II selective inhibitor was later named Vioxx as its registered trade name; its chemical name is rofecoxib. Vioxx was approved in the U.S. in October of 1999 after only seven years of development. The defective product will be hereinafter referred to as **"VIOXX."**

22. **MERCK**'s first worry in the mid to late 1990's was that its drug would show greater heart risk than cheaper painkillers.

23. Indeed, outside studies have shown that **VIOXX** greatly increases the risk of heart attacks, stroke and blood clots, and that complete heart failure can occur within months of the first dose.

24. **MERCK**, however, concealed critical information regarding serious flaws in its studies until September 30, 2004, when **MERCK** voluntarily recalled **VIOXX**, and removed it from the market.

25. This action arises from the sales and efficacy of **VIOXX**, an osteoarthritis and pain relief drug containing rofecoxib.

26. **MERCK** obtained FDA approval on **VIOXX** in approximately May of 1999 and began its distribution and sale throughout the United States in approximately May of 1999. **VIOXX** is a brand name used by **MERCK** to market and distribute rofecoxib.

27. **MERCK** distributed and sold **VIOXX** to consumers such as **PLAINTIFFS**. This rofecoxib was approved for marketing based on information in the New Drug Application, which was on a fast track, six-month approval process to FDA.

6

M00E516669

28.   Despite knowledge in its clinical trials and post marketing reports, studies and information relating to cardiovascular related adverse health effects, **MERCK** promoted and marketed **VIOXX** as safe and effective for persons such as **PLAINTIFFS.**

29.   **MERCK** concealed the serious cardiovascular risks associated with **VIOXX** because a successful launch of **VIOXX** was viewed as critical for **MERCK** and safety concerns over hypertension, edema and/or cardiovascular events would have drastically impacted **MERCK**'s positioning in the market as compared to its competition drug, Celebrex ("celecoxib") placed into the market by **MERCK**'s competitors "Pharmacia" and "Pfizer" some three months prior to the launch of **VIOXX.**

30.   **MERCK** knowingly chose to place these adverse health risks on its consumers despite its knowledge at product launch and in post marketing data thereafter that use of **VIOXX** carried significant risk factors.  These adverse effects were realized in adverse event reports, in clinical trials where such events were adjudicated by primary investigators with **MERCK**'s assistance, and in one or more studies shortly after market launch, which showed statistically significant increases in adverse cardiovascular events among **VIOXX** users including strokes.

31.   In industry sponsored studies presented at the European United League Against Rheumatism ("EULAR"), an organization in which **MERCK** is a member and corporate sponsor, in June of 2000, it was shown that **VIOXX** use resulted in statistically significant increase in hypertension, myocardial infarction, and cerebrovascular accidents.  **MERCK** did nothing to further accurately publish these studies, which were again reported and denied by **MERCK** as to the hypertension problems in the official publication of the American

M00E5I6670

Pharmaceutical Association, Pharmacy Today, *Spin War Aside, Lessons Emerge From COX-2 Trials*, in August 2000, page 3.

32.    **MERCK** continued to deny the ill health effects associated with **VIOXX** while at the same time reaping the profits obtained through the non-disclosure.  **MERCK** engaged in a massive advertising and sampling program and gained continued increase in market share, including advertising directed to the District of Columbia, which enhanced **MERCK'S** financial stability to the detriment of its consumers.  The resultant effect to **MERCK** in concealing and failing to reveal and warn of the risks was a more than $2 billion profit in 2000 alone to **MERCK** and an approximately 23 percent share of the market.

33.    The profits to **MERCK** were realized as it continued to withhold relevant data from **PLAINTIFFS**, and the health care industry and public generally.  For example, in November of 2000, **MERCK** caused the publication of a study in the New England Journal of Medicine and knowingly downplayed and/or withheld from this publication the severity of cardiovascular risks associated with **VIOXX** consumption over Naproxen consumption.

34.    On or about August 29, 2001, the Journal of the American Medical Association published a peer-reviewed human epidemiologic study of the Cleveland Clinic Foundation, Cleveland, Ohio, Dr. D. Mujherjee, *et al.*, showing what **MERCK** had concealed – that the relative risk of developing a confirmed adjudicated thrombotic cardiovascular event (defined in the article as myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks) among **VIOXX** users in **MERCK** trials at a 95% confidence interval ranged from 2.2 for event-free survival analysis, 2.38 compared to Naproxen users, and 4.89 for developing serious

8

M00E516871

cardiovascular events among aspirinindicated patients. See Mukherjee, D., *et al.*, *Risk of Cardiovascular Events Associated With Selective Cox-2 Inhibitors*, A.M.A 286:8, 954-59, Aug. 22-29, 2001. In addition, the annualized myocardial infarction rates for **VIOXX** users compared to placebo revealed a statistically significant increase among **VIOXX** users. *Id.*

35.    In the JAMA study the authors set forth the theory that by decreasing PGI 2 production I [**VIOXX**] may tip the natural balance between prothrombotic thromboxande A2 and antithrombotic PGI2, potentially leading to an increase in thrombotic cardiovascular events. *Id.* at 957. In a follow-up peer-reviewed study reported in the Journal of the American College of Cardiology on or about February 6, 2002, Dr. Richard J. Bing conducted scientific testing and confirmed that the Cox-2 inhibitor A tips the balance of prostacyclin/thromboxane in favor of thromboxane, leading to increased vascular and thrombotic events, Bing, R., & Lomnicka, M., *Why Do Cyclo-Oxygenase-2 Inhibitors Cause Cardiovascular Events?*, J.A.C.C., 39:3, Feb. 6, 2002.

36.    In response to **MERCK**-authored studies, **MERCK** set forth the theory that Naproxen had a cardio-protective effect and, therefore, accounted for the cardiovascular risks among **VIOXX** users. However, this theory was debunked in approximately January of 2002, by a Vanderbilt University School of medicine human epidemiologic peer-reviewed study published in The Lancet concluding that there is an absence of a protective effect of Naproxen or other non-aspirin non-steroidal anti-inflammatory drugs on risk of coronary heart disease. Ray, W., *et al.*, *Non-steroidal anti-inflammatory drugs and risk of serious coronary heart disease: an observational cohort study*, The Lancet, 359: 118-123, Jan. 12, 2002.

9

M00E516672

37. .    In approximately September of 2001, **MERCK** received a rare third Warning Letter from FDA stating, in part, that **MERCK'S** promotional activities and materials are false, lacking in fair balance, or otherwise misleading in violation of the Federal Food, Drug, and Cosmetic Act (the Act) and applicable regulations. The FDA stated that **MERCK'S** campaign minimized potentially serious cardiovascular findings from a **VIOXX** study and misrepresented **VIOXX** safety profile. The FDA concluded that **VIOXX** has a favorable safety profile is simply incomprehensible given the rate of MI [myocardial infarction] and serious cardiovascular events compared to Naproxen.

38.    On September 30, 2004, the FDA acknowledged the voluntary withdrawal from the market of **VIOXX** (Rofecoxib) by **MERCK** after a long-term study of the drug was halted because of an increased risk of serious cardiovascular events, including heart attacks and strokes among study patients taking **VIOXX** compared to patients received placebo. The FDA also issued a Public Health Advisory to inform patients of this action and to advise them to consult with a physician about alternative medications.

39.    At all times relevant to this litigation, **MERCK** had a significant market share based upon claims of **VIOXX'S** efficacy, a very aggressive marketing program which involved financial incentives to sales teams, infusion of some 700 new sales representatives, and a massive advertising and sampling program.

40.    As a result of such marketing, **VIOXX** gained a significant market share in competition with Celebrex that **MERCK** would not have gained if **MERCK** had not suppressed information about **VIOXX** and/or made false representations of **VIOXX'S** superiority and efficacy.

10

M00E516673

41.    If **MERCK** had not engaged in this conduct, consumers, including **PLAINTIFFS** would have switched from **VIOXX** to safer products or refrained wholly from its use.

42.    **PLAINTIFFS** allege that the suppression of this information constituted a common scheme by **MERCK** to conceal material information from **PLAINTIFFS**.

43.    **PLAINTIFFS** allege that the marketing strategies, including without limitation the detail and sampling programs and direct-to-consumer advertising of **MERCK** targeted **PLAINTIFFS** to induce him to purchase **VIOXX**.  At the time **MERCK** distributed, manufactured and marketed **VIOXX**, **MERCK** intended that **PLAINTIFFS** would rely on the marketing, advertisements and product information propounded by **MERCK**.

## STATUTE OF LIMITATIONS IS TOLLED AS A RESULT OF
## MERCK'S FRAUDULENT CONCEALMENT

44.    **PLAINTIFFS** did not discover the harmful effects and increased risk caused by the consumption of **VIOXX** until after its recall in September 2004.

45.    Although **MERCK** knew of the dangerous and harmful risk of stroke and heart attack caused by the consumption of **VIOXX**, even before the drug was approved in 1999, **MERCK** nevertheless concealed these dangers from **PLAINTIFFS** in this case.

46.    **MERCK** had a fixed purpose in concealing the dangerous and harmful effects of **VIOXX** in that **MERCK** was earning billions of dollars a year in the sale and distribution of this unreasonably dangerous drug.

47.    **PLAINTIFFS** reasonably relied upon **MERCK**'s representation that, the drug was safe and effective and on **MERCK**'s science regarding this known danger.

## COUNT I

11

M00ES16674

## STRICT LIABILITY PURSUANT TO 402(A) OF THE RESTATEMENT (SECOND) OF TORTS

48.    **PLAINTIFFS** repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

49.    The **DEFENDANTS** were engaged in the business of manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing **VIOXX** in interstate commerce, which they sold and distributed throughout the world, including the District of Columbia, and to **PLAINTIFFS**.

50.    **PLAINTIFFS** were using **VIOXX** in a manner for which it was intended or in a reasonably foreseeable manner.

51.    **VIOXX** was expected to and did reach **PLAINTIFFS** without substantial change in its condition as manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised, warned, and otherwise distributed.

52.    **PLAINTIFFS** were not aware of and reasonably could not have discovered, the dangerous nature of **VIOXX**.

53.    **VIOXX** caused increased risks of heart attack and stroke upon consumption, and therefore constituted a product unreasonably dangerous for normal use due to its defective design, defective manufacturing, and the **DEFENDANTS'** misrepresentations and inadequate facts disclosed to **PLAINTIFFS**.

54.    As a direct and proximate result of **DEFENDANTS'** manufacturing, creating designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing **VIOXX** in interstate commerce, **PLAINTIFFS** were at an

12

M00E516675

increased risk of developing heart attacks and stroke and **PLAINTIFFS** have suffered compensatory and punitive damages in an amount to be proven at trial.

**COUNT II**

**NEGLIGENCE**

55.     **PLAINTIFFS** repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

56.     It was the duty of the **DEFENDANTS** to use reasonable care in the manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing **VIOXX**.

57.     **DEFENDANTS** are responsible for one or more of the following negligent acts and/or omissions:

    a.     Failing to adequately and properly test and inspect **VIOXX** so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

    b.     Failure to utilize and/or implement a reasonably safe design in the manufacture of **VIOXX**;

    c.     Failure to manufacture **VIOXX** in a reasonably safe condition for which it was intended;

    d.     Failure to adequately and properly warn **PLAINTIFFS** of the risks of complications from **VIOXX** when used in a manner for which it was intended;

    e.     Failure to adequately and properly warn **PLAINTIFFS** of the risk of disease from **VIOXX** when used in a manner for which it was intended;

13

M00E516676

  ·     f.      Failure to adequately and properly label **VIOXX** so as to warn **PLAINTIFFS** of risks of complications;

         g.      Failure to adequately and properly label **VIOXX** so as to warn **PLAINTIFFS** of the risks of heart attack and stroke;

         h.      Manufacturing, selling, distributing, and/or prescribing **VIOXX**, a drug that constituted a hazard to health;

         i.      Manufacturing, selling, distributing, and/or prescribing **VIOXX**, a drug which caused adverse side effects; and

         j.      Other negligent acts and/or omissions.

58.    As a direct and proximate result of **DEFENDANTS'** manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, distributing, and/or prescribing **VIOXX**, **PLAINTIFFS** were at an increased risk of developing heart attacks and strokes and **PLAINTIFFS** have suffered compensatory and punitive damages in an amount to be proven at trial.

## COUNT III

### GROSS NEGLIGENCE

59.    **PLAINTIFFS** repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

60.    The negligent acts and/or omissions of the **DEFENDANTS** as set forth above constitute an entire want of care so as to indicate that the acts and/or omissions in question were the result of conscious indifference to the rights, safety and welfare of others, including **PLAINTIFFS**, or that they constitute malice, as that term is defined by law, so as to give rise to

14

M00E516677

an award of exemplary damages. The negligent acts and/or omissions of the **DEFENDANTS**, when viewed objectively from the standpoint of the **DEFENDANTS** at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and of which the **DEFENDANTS** had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety and welfare of others.

## COUNT IV

## NEGLIGENT MISREPRESENTATION

61.    **PLAINTIFFS** repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

62.    **DEFENDANTS** are also strictly liable to **PLAINTIFFS** under sections 323, 402(a), and 402(b), of the Restatement (Second) of Torts, in misrepresenting to the public that its product was safe and without defect; which statement and representation was false and involved a material fact concerning the character or quality of the product in question, and upon which representation the consumer, constructively relied, and which constituted a producing cause of the **PLAINTIFFS'** damages herein.

63.    **DEFENDANTS** made misrepresentations and actively concealed adverse information at a time when the **DEFENDANTS** knew, or should have known, that **VIOXX** had defects, dangers and characteristics that were other than what the **DEFENDANTS** had represented to the FDA and the consuming public, including **PLAINTIFFS**. Specifically, **DEFENDANTS** misrepresented to and/or actively concealed from **PLAINTIFFS**, FDA and the consuming public that:

15

M00E516678

   a.    **VIOXX** had statistically significant increase in side effects such as hypertension, edema, and/or myocardial infarction, which could result in death;

   b.    There had been insufficient studies regarding the safety and efficacy of **VIOXX** before its product launch;

   c.    **VIOXX** was not fully and adequately tested;

   d.    Prior studies showed serious adverse risks from ingesting **VIOXX**;

   e.    The risk of stroke and hypertension was much higher than had been reported in the scientific literature; and

   f.    The results of the Vigor study which showed serious cardiovascular events occurred in 101 patients who took **VIOXX**, compared to 46 patients who took Naproxen (a type of over-the-counter NSAID); and, myocardial infarctions occurred in 20 patients in the **VIOXX** treatment group as opposed to only four patients in the Naproxen treatment group.

64.    These misrepresentations and/or active concealments were perpetuated directly and/or indirectly by **DEFENDANTS**. **DEFENDANTS** knew or should have known that these representations were false and made the representations with the intent or purpose that **PLAINTIFFS** would rely on them leading to the use of **VIOXX**.

65.    At the time of the fraudulent misrepresentations, **PLAINTIFFS** was unaware of the falsity of the statements being made and believed them to be true. **PLAINTIFFS** justifiably relied on or were induced by the misrepresentations to their detriment. These misrepresentations constitute a continuing tort against **PLAINTIFFS** and other persons who ingested **VIOXX**.

M00E516679

## COUNT V

## BREACH OF EXPRESS WARRANTY

66.     **PLAINTIFFS** repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

67.     **DEFENDANTS** expressly warranted to **PLAINTIFFS**, by and through statements made by **DEFENDANTS** and/or their authorized agents and/or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients, and the general public, that **VIOXX** was safe, effective, fit and proper for its intended use.

68.     In using **VIOXX**, **PLAINTIFFS** relied on the skill, judgment, representations and foregoing express warranties of the **DEFENDANTS**. These warranties and representations were false in that **VIOXX** was not safe and was unfit for the uses for which it was intended.

69.     As a direct and proximate result of **DEFENDANTS'** breaches of warranties, **PLAINTIFFS** have or are at an increased risk of developing heart attack and/or stroke and **PLAINTIFFS** have suffered compensatory and punitive damages in an amount to be proven at trial.

70.     **DEFENDANTS** breached the express warranty of merchantability and the express warranty that its product would befit for a particular purpose, as set forth in the business and commercial codes of the District of Columbia. These warranties were breached by **DEFENDANTS'** failure to adequately design, manufacture and market its product and/or warn of dangers **DEFENDANTS** knew or should have known about associated with a defective product. The above described acts and/or omissions were singularly and/or cumulatively

M00E516680

approximate and/or producing cause of the occurrence in question and the resulting injuries and damages sustained by the **PLAINTIFFS**.

**COUNT VI**

**BREACH OF IMPLIED WARRANTY**

71.     **PLAINTIFFS** repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

72.     Prior to the time that **VIOXX** was used by **PLAINTIFFS**, **DEFENDANTS** impliedly warranted to **PLAINTIFFS** that **VIOXX** was of merchantable quality and safe and fit for the use for which it was intended.

73.     **PLAINTIFFS** were and are unskilled in the research, design and manufacture of **VIOXX** and reasonably relied entirely on the skill, judgment and implied warranty of the **DEFENDANTS** in using VIOXX.

74.     **VIOXX** was neither safe for its intended use nor of merchantable quality, as warranted by **DEFENDANTS**, in that it had dangerous propensities when put to its intended use and would cause severe injuries to the user.

75.     As a direct and proximate result of **DEFENDANTS'** breaches of warranties, **PLAINTIFFS** were or are at an increased risk of developing heart attack and stroke and **PLAINTIFFS** have suffered compensatory and punitive damages in an amount to be proven at trial.

76.     **DEFENDANTS** breached the implied warranty of merchantability and the implied warranty that its product would be fit for a particular purpose, as set forth in the New Mexico Business and Commercial rules.  These warranties were breached by **DEFENDANTS'**

18

M00E516681

failure to adequately design, manufacture, and market their product and/or warn of dangers **DEFENDANTS** knew or should have known about associated with a defective product. The above described acts and/or omissions were singularly and/or cumulatively approximate and/or producing cause of the occurrence in question and the resulting injuries and damages sustained by the **PLAINTIFFS**.

**COUNT VII**

**DISTICT OF COLUMBIA'S CONSUMER PROTECTION PROCEDURESACT**

77.    **PLAINTIFFS** repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

78.    **DEFENDANTS** are further liable for violating the District of Columbia's Consumer Protection Procedures Act DC Code §28-3904. More specifically, **DEFENDANTS'** conduct constitutes prohibited acts in violating said applicable sections in that **DEFENDANTS** introduced into commerce a drug which was misbranded because the labeling and/or advertising was misleading. Lastly, **PLAINTIFFS** assert that **DEFENDANTS** violated said sections in that the labeling and/or packaging for the drug provided to **PLAINTIFFS** was false and misleading.

**COUNT VIII**

**SURVIVAL ACT**

79.    **PLAINTIFFS** repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

80.    **MERCK** is further liable for injuries suffered by Plaintiff decedents pursuant to the District of Columbia's Survival Act DC Code § 12-101.

**COUNT VIII**

19

M00E516682

## LOSS OF CONSORTIUM

81.    **PLAINTIFFS/SPOUSES** repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

82.    As a further direct and proximate result of the aforementioned negligent acts and/or omissions and/or breaches of **DEFENDANTS** as set forth and described above, the **PLAINTIFFS/SPOUSES**, and each of them, have suffered a loss of consortium and will suffer a loss of consortium in the future, all in an amount not presently determinable but to be proven at time of trial.

## DAMAGES

83.    **PLAINTIFFS** repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

84.    As a proximate cause of the above described acts and/or omissions on the part of **DEFENDANTS**, by and through their vice principals, agents and/or representatives, **PLAINTIFFS** have sustained damages and harm.  **PLAINTIFFS** seek all damages to which they are entitled at law for personal, emotional, economic, and physical injuries sustained in the past, as well as damages they will continue to sustain in the future as a result of the occurrence in question.

85.    **PLAINTIFFS** have suffered personal injuries and is entitled to damages as a result of the conduct of the **DEFENDANTS** including, but not limited to:

a.    medical, hospital, pharmaceutical and funeral expenses;

b.    loss of earning capacity, past and future; and

c.    mental anguish, past and future;

20

M00E516683

86.    **PLAINTIFFS** seek all damages to which they are entitled at law and/or equity for the physical, emotional and/or economic damages which she has sustained since the incident, and the losses, which in reasonable probability, they will sustain in the future. **PLAINTIFFS** also seek punitive damages in an amount to be determined by the jury.

<u>**PRAYER**</u>

87.    **PLAINTIFFS** respectfully pray that the **DEFENDANTS** be cited to appear and answer herein, and that upon final hearing hereof, **PLAINTIFFS** receive a judgment from **DEFENDANTS** for:

a.    Damages as pleaded, including, but not limited to, compensatory, actual, consequential, direct and/or punitive damages;

M00E516684

b.    Costs of court, attorneys' fees and expenses necessary for the preparation of this case to trial;

c.    Judgment interest at the highest lawful rate and to the maximum extent allowed by law;

d.    Interest on the judgment at the highest legal rate from the date the judgment is entered; and

e.    All further relief, at law and/or equity to which the **PLAINTIFFS** may show themselves justly entitled.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues of material fact.

Respectfully submitted,

BRANCH LAW FIRM

Turner W. Branch, Esq., # 417738
1424 K Street NW, 6th Floor
Washington, DC 20005

Printable Summary                                                                    Page 1 of 1



Your submission was successful! Your trace number is **ED301J020063614**. The details of your filing are shown below.

| Timestamp: | |
|---|---|
| 11/27/2007 | 11:48:50 AM (U.S. Mountain: Arizona) |

**This is not your official receipt. Your receipt may be viewed in Review Status after your Filing Status changes to "Confirmation".**

| Description of Fee | Amount |
|---|---|
| eFiling Processing Fees | $10.34 |
| Court Filing Fees | $0.00 |
| CaseFileXpress eService Fee | $1.00 |
| CaseFileXpress Filing Fee | $4.00 |
| **Total cost of filing:** | **$15.34** |

Personal Information

**Filer:** branchlf1
**Attorney of Record:** branchlf1
**Name:** Turner Branch
**Law Firm or Organization:** Branch Law Firm
**Bar Number:** 417738
**Filer Position:** Attorney
**Address:** 2025 Rio Grande NW
Albuquerque, NM 87104
**Phone:** (505) 243-3500
**Fax:** (505) 243-3534
**Email:** branchlf@flash.net

Payment Information

**Payment Method:** Credit Card
**Address:** 2025 Rio Grande NW
Albuquerque, NM 87104
**Credit Card Type:** AMEX
**Credit Card #:** XXXX XXXX XXXX 2413
**Cardholder Name:** Turner Branch

Filing Information

**Case Title:** First Amended Complaint
**Sealed Case:** No
**County Name:** D.C. Superior Court
**Court Type:** District
**Court Name:** D.C. Superior Court
**Cause/Case Number:** 2007 CA 006598 B
**Document Type:** Amended Complaint Filed
**Plaintiff Attorney(s):**
Turner Branch
**Judge(s):** Judith Bartnoff
**Special Instructions:**
**Client Matter #:** 802.0000

Document Information

**File Name:** First Amended DC 13.pdf

M00E516686

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
11/27/2007
CT Log Number 512825769

| | |
|---|---|
| **TO:** | Ellen Gregg<br>Womble Carlyle Sandridge & Rice, PLLC<br>301 North Main Street, Suite 300<br>Winston-Salem, NC 27101 |
| **RE:** | **Process Served in District of Columbia** |
| **FOR:** | Merck & Co., Inc. (Domestic State: NJ) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | See Attached List vs. Merck & Co., Inc., Dft. (9 cases) |
| **DOCUMENT(S) SERVED:** | Summons, Initial Order and Addendum, Complaint, Attachment, First Amended Complaint |
| **COURT/AGENCY:** | Superior Court - Civil Division, DC |
| **NATURE OF ACTION:** | Product Liability Litigation - Drug Litigation - Personal Injury-Vioxx |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Washington, DC |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 11/27/2007 at 15:53 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Turner W. Branch<br>Branch Law Firm<br>1424 K Street, NW<br>6th Floor<br>Washington, DC 20005<br>800-828-4529 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex Priority Overnight , 798317352751<br>Email Notification, Debra A Bollwage DEBRA_BOLLWAGE@MERCK.COM<br>Email Notification, Kristin L. Sunderman kristin_sunderman@merck.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br><br><br>**TELEPHONE:** | C T Corporation System<br>Mark Diffenbaugh<br>1015 15th Street, N.W.<br>Suite 1000<br>Washington, DC 20005<br>202-572-3133 |

WCS&R
NOV 2 8 2007
RECEIVED

Page 1 of 2 / MD

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal opinion
as to the nature of action, the amount of damages, the answer date,
or any information contained in the documents themselves.
Recipient is responsible for interpreting said documents and for
taking appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

M00E516687

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
11/27/2007
CT Log Number 512825769

TO:     Ellen Gregg
        Womble Carlyle Sandridge & Rice, PLLC
        301 North Main Street, Suite 300
        Winston-Salem, NC 27101

RE:     **Process Served in District of Columbia**

FOR:    Merck & Co., Inc. (Domestic State: NJ)

**MULTIPLE CASES**

| | | |
|---|---|---|
| **1.CASE NUMBER/PLAINTIFF:** | 0006598-07 / Shirley Truscott, Pltf. |
| **2.CASE NUMBER/PLAINTIFF:** | 0006598-07 / Steven Utschig, Pltf. |
| **3.CASE NUMBER/PLAINTIFF:** | 0006598-07 / Robert Wilhide, Pltf. |
| **4.CASE NUMBER/PLAINTIFF:** | 0006598-07 / Harold W. Wilkinson, Pltf. |
| **5.CASE NUMBER/PLAINTIFF:** | 0006598-07 / Patricia Wiseman, Pltf. |
| **6.CASE NUMBER/PLAINTIFF:** | 0006598-07 / Gordon Wright, Pltf. |
| **7.CASE NUMBER/PLAINTIFF:** | 0006598-07 / Thomas Young, Pltf. |
| **8.CASE NUMBER/PLAINTIFF:** | 0006598-07 / Elizabeth Zei, Pltf. |
| **9.CASE NUMBER/PLAINTIFF:** | 0006598-07 / Patrick Zoller, Pltf. |

Page 2 of 2 / MD

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

M00E516688

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

Shirley Truscott
3608 Parkway Dr.
Royal Oak, MI 48073

and

Steven Utschig
3111 E. Greenleaf Drive
Appelton, WI 54913

and

Robert Wilhide
7128 Blue Mountain Rd.
Thurmont, MD 21788

and

Harold W. Wilkinson
1470 Lake Harney Road
Geneva, FL 32732

and

Patricia Wiseman
980 Century Avenue SE
Palm Bay, FL 32909

and

Gordon Wright
2820 NE 97th St. Rd.
Anthony, FL 32617-0000

and

Thomas Young
P.O. 1171
Purvis, MS 39475

and

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

RECEIVED
Civil Clerk's Office
SEP 2 9 2007
Superior Court of the
District of Columbia
Washington, D.C.

**0006598-07**

Civil Action No:_____

**JURY TRIAL DEMANDED**

WCS&R
NOV 2 8 2007
RECEIVED

M00BC21088

Elizabeth Zei                          §
676 East Jackson Street                §
Ripon, WI 54971                        §
                                       §
    and                                §
                                       §
Patrick Zoller                         §
723 Tulip Circle West                  §
Auburndale, FL 33823,                  §
                                       §
        Plaintiffs,                    §
                                       §
        v.                             §
                                       §
MERCK & CO., INC.,                     §
One Merck Drive                        §
Whitehouse Station, NJ 08889           §
    w/s/o CT CORPORATION               §
    1025 Vermont Avenue, N.W.          §
    Washington, DC 20005,              §
                                       §
        Defendants.                    §
                                       §

## **COMPLAINT**
### (Vioxx Litigation)

1. Jurisdiction is founded upon 28 U.S.C. §1332.

2. Plaintiffs are citizens and residents of states other than New Jersey.

3. Defendant Merck & Co. ("Merck"), and/or its wholly-owned subsidiaries, is engaged, or has been engaged, in the manufacturing, marketing, sale, promotion, and distribution of pharmaceuticals throughout the United States, the United Kingdom, the Netherlands and is doing business in the District of Columbia.

4. Defendant is the manufacturer of Vioxx ("VIOXX") who sold and promoted the drug to Plaintiffs, either directly, and/or through its wholly-owned subsidiaries,

2

M00BC21089

between May 1999, when VIOXX was approved by the FDA, and September 2004, when it was voluntarily withdrawn from the market.

5.  VIOXX is a non-steroidal anti-inflammatory medication known as Rofecoxib, which was manufactured, promoted, and distributed by Defendant Merck, and/or its wholly-owned subsidiaries, as a safe and harmless pain medication in the District of Columbia, across America, as well as world wide.  Merck Sharpe & Dohme BV (The Netherlands) and Merck Sharpe & Dohme Limited (United Kingdom) are wholly-owned subsidiaries of Merck.  At all times relevant hereto, all the marketing, distributing, labeling, and warning for VIOXX were provided to these subsidiaries by their parent corporation Merck.

6.  The amount in controversy exceeds $75,000 exclusive of interest and costs.

7.  Between May 1999 and September 30, 2004, Plaintiff Shirley Truscott made several purchases of VIOXX for prescribed treatment of pain by her physician in the state of Michigan.  She took Vioxx until she suffered a heart attack in December 1999 and in December 2004 as a proximate result of his ingestion of VIOXX.

8.  Between May 1999 and September 30, 2004, Plaintiff Steven Utschig made several purchases of VIOXX for prescribed treatment of pain by his physician in the state of Wisconsin.  He took Vioxx until he suffered a heart attack in June 2000 and in January 2003 as a proximate result of his ingestion of VIOXX.

9.  Between May 1999 and September 30, 2004, Plaintiff Robert Wilhide made several purchases of VIOXX for prescribed treatment of pain by his physician in the state of Maryland.  He took Vioxx until he suffered a heart attack in May 2003 as a proximate result of his ingestion of VIOXX.

M00BC21090

10.    Between May 1999 and September 30, 2004, Plaintiff Harold W. Wilkinson made several purchases of VIOXX for prescribed treatment of pain by his physician in the state of Maryland. He took Vioxx until he suffered a heart attack in late 2000/early 2001 as a proximate result of his ingestion of VIOXX.

11.    Between May 1999 and September 30, 2004, Plaintiff Patricia Wiseman made several purchases of VIOXX for prescribed treatment of pain by her physician in the state of Florida. She took Vioxx until she suffered a heart attack in May 2003 as a proximate result of his ingestion of VIOXX.

12.    Between May 1999 and September 30, 2004, Plaintiff Gordon Wright made several purchases of VIOXX for prescribed treatment of pain by his physician in the state of Florida. He took Vioxx until he suffered a heart attack on or about June 19, 2000 as a proximate result of his ingestion of VIOXX.

13.    Between May 1999 and September 30, 2004, Plaintiff Thomas Young made several purchases of VIOXX for prescribed treatment of pain by her physician in the state of Mississippi. He took Vioxx until he suffered a heart attack on or about August 19, 2000 and a stroke as a proximate result of her ingestion of VIOXX.

14.    Between May 1999 and September 30, 2004, Plaintiff Elizabeth Zei made several purchases of VIOXX for prescribed treatment of pain by her physician in the state of Wisconsin. She took Vioxx until she suffered a heart attack in September 2002 as a proximate result of his ingestion of VIOXX.

15.    Between May 1999 and September 30, 2004, Plaintiff Patrick Zoller made several purchases of VIOXX for prescribed treatment of pain by his physician in the state

M00BC21091

of Florida. He took Vioxx until he suffered a heart attack on or about July 4, 2004 as a proximate result of his ingestion of VIOXX.

16. The Plaintiffs above were not in any manner informed or advised that VIOXX was an unreasonably dangerous drug, nor of the Defendant and/or Defendant's wholly-owned subsidiaries' wrongful conduct in promoting VIOXX prior to year 2004.

## FACTS APPLICABLE TO ALL COUNTS

17. Plaintiffs suffered physical injuries, including but not limited to heart injuries, which have caused and will and will continue to cause Plaintiffs injury, surgery, pain, suffering, impairment of health and body efficiency, mental anguish, emotional distress, and loss of enjoyment of life.

18. The VIOXX purchased and consumed by Plaintiffs left the possession of the Defendant, and/or its wholly-owned subsidiaries, and entered the stream of commerce with a design defect that caused ischemic events, rendering the VIOXX unreasonably dangerous.

19. The Defendant, and/or its wholly-owned subsidiaries, learned of the risks associated with the use of VIOXX, yet continued to engage in aggressive marketing directly to consumers without providing proper warning about the risk of harm.

## COUNT I
### (Negligence)

20. Defendant, and/or its wholly-owned subsidiaries, had a duty to exercise reasonable care, including but no limited to the following:

    a.  Design, manufacture, market and sale of safe drugs.

    b.  Not manufacture, market and sell unreasonably dangerous drugs.

M00BC21092

    c.  Properly test VIOXX for safety.

    d.  Warn of the dangerous properties of VIOXX Defendant, and/or its wholly-owned subsidiaries, knew, should have known, and/or had reason to know existed.

    e.  Exercise the necessary degree of care expected and required of manufactures and sellers of health care products.

21.  Defendant, and/or its wholly-owned subsidiaries, were negligent, careless, reckless, willful, wanton, and grossly negligent, and deviated from their duty, including but not limited to the following particulars:

    a.  Failure to design, manufacture, market and sell safe drugs.

    b.  Manufacture, marketing and sale of unreasonably dangerous drugs.

    c.  Failure to properly test VIOXX for safety.

    d.  Failure to warn of the dangerous properties of VIOXX Defendant, and/or its wholly-owned subsidiaries, knew, should have known, and/or had reason to know existed.

    e.  Failure to exercise the necessary degree of care expected and required of manufacturers and sellers of health care products

22.  As a direct and proximate result of Defendant's, and/or its wholly-owned subsidiaries', negligence and failure to warn, Plaintiffs have been injured as aforesaid.

23.  Plaintiffs will also continue to suffer additional injuries due to past and future treatment and foreseeable complications, which are a direct and proximate result of Defendant's, and/or its wholly-owned subsidiaries', negligence.

M00BC21093

## COUNT II
### (Breach of Implied Warranty)

24. All of the allegations contained in Count I are realleged and incorporated herein by reference.

25. At all times relevant to this action, Defendant, and/or its wholly-owned subsidiaries, impliedly warranted to the market that VIOXX was safe, effective, fit and proper for its intended use through statements made by Defendant, and/or its wholly-owned subsidiaries, and authorized agents and sales representatives, orally, in publications, package inserts and other written materials, to Plaintiffs, Plaintiffs' physicians and the health care community.

26. Defendant, and/or its wholly-owned subsidiaries knew, or should have known, that consumers, including Plaintiffs and their attending physicians, were relying on Defendant's, and/or its wholly-owned subsidiaries', skills and judgments, and the implied warranties and representations.

27. Defendant, and/or its wholly-owned subsidiaries, had a duty to comply with the warranties made concerning VIOXX. Plaintiffs bought and took VIOXX in reliance on Defendant's, and/or its wholly-owned subsidiaries', warranty.

28. Defendant, and/or its wholly-owned subsidiaries, breached this warranty as the product was found defective, i.e., not reasonably fit for its intended purpose, nor safe when taken in accordance with instructions. As a direct result of the breach of implied warranties, the Plaintiffs have been injured as aforesaid.

29. Defendant, and/or its wholly-owned subsidiaries, impliedly warranted that VIOXX was of good and merchantable quality, reasonably safe and fit for the ordinary purpose for which non-steroidal anti-inflammatory drugs are used.

7

M00BC21094

30. As a direct and proximate result of Defendant's, and/or its wholly-owned subsidiaries', breach of warranties, Plaintiffs were injured and suffered damages as aforesaid.

## COUNT III
### (Strict Liability)

31. All of the allegations contained in Count II are realleged and incorporated herein by reference.

32. VIOXX is, and at all times relevant to this action was, an unreasonably dangerous and defective drug when used by patients for its advertised and intended purpose of the reduction of arthritic pain without the gastric side effects.

33. Defendant, and/or its wholly-owned subsidiaries, are engaged or have been engaged in the business of producing VIOXX, and are, or have been, commercial manufacturers of said drug, which has caused harm.

34 Plaintiffs purchased and ingested VIOXX to alleviate pain they were experiencing, and received and ingested VIOXX in the same form and condition as it left Defendant, and/or its wholly-owned subsidiaries', possession.

35. Said product was sold in a defective and unreasonably dangerous condition when placed on the market by defendant, and/or its wholly owned subsidiaries.

36. VIOXX is a product, which Defendant, and/or its wholly-owned subsidiaries, expected to and did reach Plaintiff consumers or users without any substantial change from the condition in which it was sold. Defendant, and/or its wholly-owned subsidiaries, knew, or should have known, that consumers and their attending physicians could not realize and could not detect the dangerous nature of VIOXX. Sufficient warnings as to the substantial risks associated with VIOXX should have been provided to

8

M00BC21095

overcome Defendant's, and/or its wholly-owned subsidiaries', aggressive advertising techniques and campaigns promoting the safety and efficacy of VIOXX.

37. As a result of Defendant's, and/or its wholly-owned subsidiaries', marketing and promotion of said defective and unreasonably dangerous drug, Plaintiffs ingested VIOXX and have suffered injury, loss, and damages as aforesaid.

**WHEREFORE,** Plaintiffs demand judgment against the Defendant, and/or its wholly-owned subsidiaries, for compensatory damages in the amount of $5,000,000.00 each, and punitive damages in the amount of $5,000,000.00 each, together with interest and costs.

Respectfully submitted,

BRANCH LAW FIRM

Turner W. Branch, Esq., # 417738
1424 K Street NW, 6th Floor
Washington, DC 20005

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues of material fact.

Respectfully submitted,

BRANCH LAW FIRM

Turner W. Branch, Esq., # 417738
1424 K Street NW, 6th Floor
Washington, DC 20005

9

M00BC21096

10

M00BC21097

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

Shirley Truscott, 3608 Parkway Dr., Royal Oak, MI 48073

*Plaintiff*

0006593-07

VS.

Merck & Co., Inc.,

Civil Action No. _____

*Defendant*

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below**. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

Turner W. Branch, Esq., #417738

Name of Plaintiff's Attorney

1424 K Street NW, 6th Floor

Address

Washington, DC 2005

800-828-4529

Telephone

By _____

Deputy Clerk

Date _____

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

M00BC21098

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue. N.W., for more information concerning where you may ask for such help.



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

SHIRLEY TRUSCOTT
Vs.                                                    C.A. No.        2007 CA 006598 B
MERCK & CO., INC

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge JUDITH BARTNOFF
Date:  September 29, 2007
Initial Conference: 9:30 am, Friday, January 04, 2008
Location:  Courtroom 415
             500 Indiana Avenue N.W.
             WASHINGTON, DC 20001

Caio.doc

MOBC21100

# ADDENDUM TO INITIAL ORDER AFFECTING
# ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.). "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

Caio.doc

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process Transmittal**
11/27/2007
CT Log Number 512825769

TO:    Ellen Gregg
       Womble Carlyle Sandridge & Rice, PLLC
       301 North Main Street, Suite 300
       Winston-Salem, NC 27101

RE:    **Process Served in District of Columbia**

FOR:   Merck & Co., Inc. (Domestic State: NJ)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | See Attached List vs. Merck & Co., Inc., Dft. (9 cases) |
| **DOCUMENT(S) SERVED:** | Summons, Initial Order and Addendum, Complaint, Attachment, First Amended Complaint |
| **COURT/AGENCY:** | Superior Court - Civil Division, DC |
| **NATURE OF ACTION:** | Product Liability Litigation - Drug Litigation - Personal Injury-Vioxx |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Washington, DC |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 11/27/2007 at 15:53 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Turner W. Branch<br>Branch Law Firm<br>1424 K Street, NW<br>6th Floor<br>Washington, DC 20005<br>800-828-4529 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex Priority Overnight , 798317352751<br>Email Notification, Debra A Bollwage DEBRA_BOLLWAGE@MERCK.COM<br>Email Notification, Kristin L. Sunderman kristin_sunderman@merck.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:** | C T Corporation System<br>Mark Diffenbaugh<br>1015 15th Street, N.W.<br>Suite 1000<br>Washington, DC 20005 |
| **TELEPHONE:** | 202-572-3133 |



WCS&R
NOV 2 8 2007
RECEIVED

Page 1 of  2 / MD

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

M00BC21102

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
11/27/2007
CT Log Number 512825769

TO:     Ellen Gregg
        Womble Carlyle Sandridge & Rice, PLLC
        301 North Main Street, Suite 300
        Winston-Salem, NC 27101

RE:     **Process Served in District of Columbia**

FOR:    Merck & Co., Inc (Domestic State: NJ)

**MULTIPLE CASES**

| | | |
|---|---|---|
| **1. CASE NUMBER/PLAINTIFF:** | 0006598-07 / Shirley Truscott, Pltf. |
| **2. CASE NUMBER/PLAINTIFF:** | 0006598-07 / Steven Utschig, Pltf. |
| **3. CASE NUMBER/PLAINTIFF:** | 0006598-07 / Robert Wilhide, Pltf. |
| **4. CASE NUMBER/PLAINTIFF:** | 0006598-07 / Harold W. Wilkinson, Pltf. |
| **5. CASE NUMBER/PLAINTIFF:** | 0006598-07 / Patricia Wiseman, Pltf. |
| **6. CASE NUMBER/PLAINTIFF:** | 0006598-07 / Gordon Wright, Pltf. |
| **7. CASE NUMBER/PLAINTIFF:** | 0006598-07 / Thomas Young, Pltf. |
| **8. CASE NUMBER/PLAINTIFF:** | 0006598-07 / Elizabeth Zei, Pltf. |
| **9. CASE NUMBER/PLAINTIFF:** | 0006598-07 / Patrick Zoller, Pltf. |

Page 2 of  2 / MD

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal opinion
as to the nature of action, the amount of damages, the answer date,
or any information contained in the documents themselves.
Recipient is responsible for interpreting said documents and for
taking appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

M00BC21103

B 2283
JR

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Shirley Truscott, Steven Utschig, Robert Wilhide, Harold W. Wilkinson, Patricia Wiseman, Gordon Wright, Thomas Young, Elizabeth Zei, and Patrick Zoller

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Turner W. Branch
Branch Law Firm
1424 K Street, NW, 6th Floor
Washington, DC 20005
(800) 828-4529

## DEFENDANTS

Merck & Co., Inc.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Hunterdon, NJ
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

Katherine Leona
Willi
725
Was
(202

Case: 1:07-cv-02283
Assigned To : Robertson, James
Assign. Date : 12/18/2007
Description: PI/Malpractice

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

○ 2 U.S. Government
Defendant

○ 3 Federal Question
(U.S. Government Not a Party)

◉ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHI
FOR PLAINTIFF AN

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ◉ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**◉ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☒ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| O **G. Habeas Corpus/ 2255** | O **H. Employment Discrimination** | O **I. FOIA/PRIVACY ACT** | O **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O **K. Labor/ERISA (non-employment)** | O **L. Other Civil Rights (non-employment)** | O **M. Contract** | O **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

O 1 Original Proceeding    ⊙ 2 Removed from State Court    O 3 Remanded from Appellate Court    O 4 Reinstated or Reopened    O 5 Transferred from another district (specify)    O 6 Multi district Litigation    O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. s 1441 et seq. - Removal from state court

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ more than $75,000    Check YES only if demanded in complaint    JURY DEMAND: YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐  NO ☒    If yes, please complete related case form.

DATE  12/18/07    SIGNATURE OF ATTORNEY OF RECORD  *Katherine Leong*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*Shirley Truscott*
Plaintiff
*et. al*

v.                                    Civil Action No.        07 2283

*Merck & Co., Inc*                        DEC 18 2007
Defendant

The above entitled action, removed from the Superior Court for the District of Columbia, has been filed and assigned to Judge ROBERTSON, J. JR _____. All counsel and/or pro se litigants must include on any subsequent pleadings both the civil action number and the initials of the judge assigned to this action.  (See preceding sentence for judge's initials).

Pursuant to Local Rule 83.2(a)(b), an attorney must be a member in good standing of the bar of this Court to appear, file papers or practice.  To assist the Clerk's Office in properly recording all counsel of record, counsel for all parties must enter their appearance in accordance with our Local Rule 83.6(a).  Timely compliance with this requirement will enable the Clerk's Office to ensure prompt delivery of notices and orders.

Finally, your attention is called to Local Rule 16.3, Duty to Confer.  This rule clearly spells out the duty of counsel, as well as pro se litigants, to confer and report back to the Court on a wide range of questions.

NANCY MAYER-WHITTINGTON, CLERK

By _____
Deputy Clerk

cc: *Turner Branch*

929A
Rev. 7/02